UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

BYRON H. HODGSON,                    §
                                     §
        Plaintiff,                   §
                                     §
vs.                                  §          No. SA: 13–CV–702
                                     §
UNITED STATES OF AMERICA             §
                                     §
        Defendant.                   §

ORDER:  (1) GRANTING DEFENDANT'S MOTION TO DISMISS, AND
        (2) DENYING PLAINTIFF'S MOTION TO AMEND

On May 12, 2014, the Court heard argument on Plaintiff Byron

Hodgson's ("Hodgson") Motion to Amend (Dkt. # 12) and the Motion to Dismiss

by Defendant, the United States (Dkt. # 7).  Javier Maldonado, Esq., represented

Plaintiff, and Erez Reuveni, Esq., appeared on behalf of the United States.  After

careful consideration of the arguments presented at the hearing and the memoranda

in support of and in opposition to the pending motions, the Court, for the reasons

that follow, **DENIES** Plaintiff's Motion to Amend (Dkt. # 12) and **GRANTS**

Defendant's Motion to Dismiss (Dkt. # 7).

BACKGROUND

Plaintiff filed suit on August 5, 2013, against the United States

pleading a cause of action for negligence under the Federal Tort Claims Act

("FTCA") and a claim for assault, battery, false arrest, and false imprisonment. ("Compl.," Dkt. # 1 ¶¶ 36–44.)  On November 11, 2013, the United States filed its timely motion to dismiss.  (Dkt. # 7.)  This motion is currently pending before the Court.

On February 8, 2014, Plaintiff filed a motion to amend the complaint. (Dkt. # 12.)  This motion is currently before the Court.

Plaintiff's claims arise out of events occurring during the summer of 2011 and relate to his immigration status and Native American blood quantum. (Compl. ¶¶ 8–13.)

The United States admitted Plaintiff on September 22, 1975, as a lawful permanent resident.  (Compl. ¶ 8.)  At a later date, Plaintiff was imprisoned in Huntsville, Texas.  (Id. ¶ 9.)  On June 7, 2011, United States Immigration and Customs Enforcement ("ICE") officers located Plaintiff at the Huntsville prison.[1] (Id.)  An ICE officer interviewed Plaintiff, and Plaintiff told him that he was an "American Indian born in Canada and enjoyed certain protections under the Jay Treaty."  (Id. ¶ 10.)  Plaintiff asked the ICE officers to investigate his special status and the fact that he believed this status prevented him from being deported.  (Id. ¶ 10.)

---

[1] It is unclear from the Complaint why ICE officers were searching for Plaintiff in the first place.

2

Nonetheless, the ICE officers issued an administrative warrant for Plaintiff's arrest and issued a Notice to Appear and a Notice of Custody Determination.  (Id. ¶ 12.)  The warrant charged Plaintiff as "being an alien in the United States who was in this county in violation of federal law and subject to detention."  (Id. ¶ 13.)  The Notice to Appear stated that although Plaintiff had been admitted to the United States, he was subject to deportation because of his criminal history.  (Id. ¶ 14.)  The Notice of Custody determination stated that Plaintiff "was being taken into custody by the Department of Homeland Security (DHS) and that he could not request release from an Immigration Judge because federal law prohibited" his release.  (Id. ¶ 15.)

Plaintiff was then transferred to the Houston Service Processing Center, operated by the Corrections Corporations of America, where he was held for a few days before being transferred to the Polk County Adult Detention Center in Livingston, Texas.  (Id. ¶ 16.)

Plaintiff next wrote a letter to ICE asking that they investigate his claim that he is an American Indian born in Canada, and as such, cannot be deported and should not be detained.  (Id. ¶ 17.)  Plaintiff received a letter from an ICE officer stating his claim was being investigated.  (Id. ¶18.)

Around June 16, 2011, Plaintiff's common law wife sent him a letter from the Indian and Northern Affairs of Canada department stating that Plaintiff

3

was registered as an Indian with them.  (Id. ¶ 19.)  Plaintiff provided this letter to

ICE.  (Id. ¶ 20.)  Plaintiff states that ICE confirmed the authenticity of this letter,

but, nonetheless, continued to detain him.  (Id.)

Plaintiff attended an immigration hearing on June 21, 2011.  (Id.

¶ 21.)  During this hearing, Plaintiff asserted that his mother was a naturalized U.S.

citizen, and therefore, he may have a claim to citizenship.  (Id.)  Additionally,

Plaintiff stated that under the Jay Treaty, because of his American Indian status,

the United States could not deport him.  (Id. ¶ 22.)  Plaintiff states he offered to

produce evidence that he was registered with Canadian authorities as a member of

an indigenous tribe.  (Id.)

Plaintiff asserts that the Immigration Judge's response—that

Plaintiff's only defense to deportation was a potential claim of citizenship, deriving

from his mother's status—was incorrect.  (Id. ¶ 23.)  Plaintiff states that the

Immigration Judge refused to hear any evidence regarding Plaintiff's status as an

American Indian born in Canada.  (Id.)  The Immigration Judge continued the

hearing to permit ICE to investigate Plaintiff's claim to citizenship.  (Id. ¶ 24.)

During the continuance, ICE obtained documentation regarding

Plaintiff's father.  (Id. ¶ 25.)  Plaintiff states that ICE had a picture of his father,

and information that his father "was an American Indian born in Canada" who had

immigrated to the United States based on his status.  (Id.)

4

The immigration hearing was reconvened on July 6, 2011, and there, the attorney for ICE stated that Plaintiff had not derived citizenship from his mother.  (Id. ¶ 26.)  The Immigration Judge found that Plaintiff was deportable and issued an order of deportation.  (Id. ¶ 27.)  Plaintiff states that neither the Immigration Judge nor the ICE attorney investigated his claim of being an American Indian born in Canada.  (Id. ¶ 28.)

ICE then commenced removal proceedings against Plaintiff.  (Id. ¶ 29.)  However, Plaintiff states that shortly thereafter, ICE realized that Plaintiff's "claim to being an American Indian born in Canada was legitimate and that he was not deportable or subject to detention."  (Id. ¶ 30.)

On August 16, 2011, ICE released Plaintiff from immigration detention.  (Id. ¶ 31.)  Plaintiff had been in custody for a total of seventy days and states that he suffered physical and emotional damage as a result.  (Id. ¶¶ 32–34.)

On September 28, 2012, Plaintiff filed an administrative complaint with the Office of the Chief Counsel for the Houston District Office of the United States Immigration and Customs Enforcement, the Office of the Principal Legal Advisor for the United State Immigration and Customs Enforcement, and the Office of the General Counsel for the United States Department of Homeland Security.  (Id. ¶ 3.)

Around April 11, 2013, the Office of the Principal Legal Advisor for

the United States Immigration and Customs Enforcement denied Plaintiff's

administrative claim.  (Id.)

## LEGAL STANDARD

I.    Motion to Amend

Under Rule 15(a) of the Federal Rules of Civil Procedure, "if the

pleading is one to which a responsive pleading is required, [a party may amend

within] 21 days after service of a responsive pleading or 21 days after service of a

motion under Rule 12(b), (e), or (f), whichever is earlier."  Fed. R. Civ.

P. 15(a)(1)(B).  "In all other cases, a party may amend its pleading only with the

opposing party's written consent or the court's leave.  The court should freely give

leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).

In considering whether to grant or deny leave to amend, the court

"may consider such factors as undue delay, bad faith or dilatory motive on the part

of the movant, . . . undue prejudice to the opposing party, and futility of

amendment."  In re Southmark Corp., 88 F.3d 311, 314–15 (5th Cir. 1996); see

also Jones v. Robinson Prop. Grp. L.P., 427 F.3d 987, 994 (5th Cir. 2005).

A trial court may properly deny leave to amend "where the proposed

amendment would be futile because it could not survive a motion to dismiss."  Rio

Grande Royalty Co., Inc. v. Energy Transfer Partners, L.P., 620 F.3d 465, 468 (5th

Cir. 2010).  An amendment is futile when "the amended complaint would fail to state a claim upon which relief could be granted." <u>Stripling v. Jordan Prod. Co.</u>, 234 F.3d 863, 873 (5th Cir. 2000).  Frequently, a determination of whether a proposed amended complaint would be subject to dismissal would require "a detailed analysis of the proposed pleading" in relation to the causes of action asserted.  <u>Moore v. Dallas Indep. Sch. Dist.</u>, 557 F. Supp. 2d 755, 759 (N.D. Tex. 2008).  To avoid this premature determination of the merits, the standard for denying an amendment based on futility is that "[i]f a proposed amendment is not <u>clearly</u> futile, then denial of leave to amend is improper." <u>Id.</u> (quoting Charles Alan Wright, et al., <u>Federal Practice and Procedure</u>, § 1487, at 637, 642 (2d ed. 1990)).

II.   <u>Motion to Dismiss</u>

A proper pleading under the Federal Rules of Civil Procedure must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007).  The complaint must contain more than mere "labels and conclusions" or "a formulaic recitation of the elements of a

cause of action." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 555).

In reviewing a motion to dismiss, a court accepts as true all of the well-pleaded factual allegations in the complaint. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). In order to survive a motion to dismiss, a claim must allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 547. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 677.

In adjudicating a motion to dismiss, the Court considers only the pleadings and those matters of which it may take judicial notice under Rule 201 of the Federal Rules of Evidence. Lovelace v. Software Spectrum Inc., 78 F.3d 1015, 1018–19 (5th Cir. 1996) (adopting a rule that a court in a securities fraud action may take judicial notice of relevant public disclosure documents required to be filed with the SEC); Hurd v. BAC Home Loans Servicing, LP, 880 F. Supp. 2d 747, 758 (N.D. Tex. 2012) (taking judicial notice of matters of public record and considering documents attached to a motion to dismiss as part of the pleadings because they were central to the claims in the complaint).

8

<u>DISCUSSION</u>

I.   <u>Defendant's Motion to Dismiss under 12(b)(1) and 12(b)(6)</u>

First, Defendant has moved to dismiss Plaintiff's complaint under 12(b)(1) alleging that the Court lacks jurisdiction to hear Plaintiff's claims. Second, Defendant moved to dismiss Plaintiff's claims under 12(b)(6) because Plaintiff cannot demonstrate that he qualifies as an American Indian of Canadian birth and was not subject to deportation.  (Dkt. # 7 at 1–2.)

When a jurisdictional challenge is raised under 12(b)(1), the burden of proof "is on the party asserting jurisdiction.  Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist."  <u>Ramming v. United States</u>, 281 F.3d 158, 161 (5th Cir. 2001).  "In examining a Rule 12(b)(1) motion, the district court is empowered to consider matters of fact which may be in dispute."  <u>Id.</u>

A.   <u>Defendant's Exhibits</u>

As a preliminary matter, Plaintiff has challenged Defendant's proffer of certain exhibits attached to its Motion to Dismiss.  (Dkt. # 10 at 4.)  Plaintiff argues that the Court should not consider these documents as part of the Motion to Dismiss because they are either not referred to in Plaintiff's complaint or are not central to his claims.  (Dkt. # 10 at 4.)

Plaintiff challenges Defendant's Exhibit 2: Form I-213 Record of Deportable Inadmissible Alien (Dkt. # 7-3); Defendant's Exhibit 3: A GEMS WebView Case Summary ("GEMS Case Summary") (Dkt. # 7-4); and Defendant's Exhibit 6: A 1972 letter from the Registrar of Canadian and Northern Affairs department (Dkt. # 7-7) arguing that he never referred to these documents and they are not central to his claims.  (Dkt. # 10 at 4.)

Plaintiff also challenges Defendant's Exhibit 7: Form FS-511 entitled "Immigrant Visa and Alien Registration" (Dkt. # 7-8) contending that Defendant does not argue that this is central to Plaintiff's claim.  (Dkt. # 10 at 4.)

In response, Defendant argues that Plaintiff incorporated each of these exhibits by reference into his complaint.  (Dkt. # 11 at 2.)  Defendant contends Exhibit 2 is incorporated because it was part of the file submitted before the Immigration Judge, it was referenced in Plaintiff's Complaint, and it is central to Plaintiff's claims.  (Id.)  Defendant also argues that Plaintiff's Complaint states that ICE officers served him with a warrant for his arrest and a Notice to Appear based upon his criminal history.  (Id.)  Therefore, his criminal record, part of Exhibit 2, is central to his FTCA claims.  (Id.)

Defendant states that Exhibit 3 was also part of the record before the Immigration Judge and is referenced in Plaintiff's complaint when Plaintiff makes "numerous allegations concerning the conduct of ICE officers and the

[Immigration Judge] concerning his claim that he was eligible for derivative citizenship." (Id. at 3.)

Defendant argues that Exhibit 6 is referenced directly in Plaintiff's complaint when Plaintiff states that the ICE officer "obtained documentation about [Plaintiff's] father" and then showed Plaintiff a picture of him. (Id.)

Defendant maintains that Exhibit 7 is referenced in Plaintiff's complaint and is central to Plaintiff's claims. (Id.) Defendant states that Plaintiff's complaint references the fact that he was admitted to the United States as an SA-1 which meant as a "special immigrant who is an alien born in an independent Western Hemisphere country." (Id. (internal quotation marks omitted).) Defendant argues this is central to Plaintiff's claim because Plaintiff argues that ICE was aware of his American Indian status. (Id.)

Defendant continues arguing that even if the Court were to find these exhibits inappropriate to consider under the Rule 12(b)(6) standard, they are properly considered as part of Defendant's Rule 12(b)(1) motion. (Id. at 4.)

Defendant is correct that what the Court may consider varies for a 12(b)(6) motion and a 12(b)(1) motion. An attack on subject-matter jurisdiction under Rule 12(b)(1) may be mounted as either a factual or a facial challenge. Menchaca v. Chrysler Credit Corp., 613 F.2d 507, 511 (5th Cir. 1980). A facial challenge asserts that even if all of the facts alleged in the complaint were true,

11

they would still be insufficient to establish subject-matter jurisdiction.  Semler v. Klang, 603 F. Supp. 2d 1211, 1219 (D. Minn. 2009).  In evaluating a facial attack, the court considers only the pleadings.  Id. at 1219–20.  In contrast, a factual challenge to subject-matter jurisdiction asserts that no subject-matter jurisdiction exists independent of what is contained in the pleadings.  Eldeeb v. Chertoff, 619 F. Supp. 2d 1190, 1198 (M.D. Fla. 2007).  When confronted with a factual challenge to subject-matter jurisdiction, a court may consider matters outside of the pleadings.[2]  Id.

A court may base its determination that subject-matter jurisdiction exists (or fails to exist) on "(1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."  Ramming, 281 F.3d at 161.  Therefore, "[i]n examining a Rule 12(b)(1) motion, the district court is empowered to consider matters of fact which may be in dispute."  Id. (citing Williamson v. Tucker, 645 F.2d 404, 413 (5th Cir. 1981)).

The Court finds that each of these exhibits is proper evidence to be considered in Defendant's challenge to the Court's subject-matter jurisdiction.

---

[2] The presentation of materials apart from the pleadings does not convert a 12(b)(1) motion into a motion for summary judgment.  Rather, a court may properly consider material outside the pleadings when a factual attack on subject-matter jurisdiction is mounted without converting the 12(b)(1) motion into a motion for summary judgment.  Cintron-Alonso v. GSA Caribbean Corp., 602 F. Supp. 2d 319 (D.P.R. 2009).

B.    8 U.S.C. § 1252(g) Jurisdiction

Section 1252(g) provides "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter."  8 U.S.C. § 1252(g).

First, Defendant argues that Plaintiff's complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) because his detention arose from the Attorney General's commencement of proceedings against Plaintiff.

Plaintiff contends that Defendant misapplies this statute because his detention arose from the initiation, not the commencement, of proceedings.  (Dkt. # 10 at 4.)  Plaintiff argues that § 1252(g) is not a jurisdictional bar on all acts arising from removal proceedings; it only applies to commencing proceedings, adjudicating cases, and executing removal orders.  (Id. at 5 (citing  Reno v. American-Arab Anti-Discrimination Committee ("AADC"), 535 U.S. 471, 482 (1999).)  Plaintiff argues that other actions apart from "these three discrete events," including claims arising from the initiation of proceedings, are not barred by § 1252(g).  (Id.)

Plaintiff argues that the difference between the initiation of proceedings and the commencement of proceedings is significant.  (Id.)  Therefore, because Defendant acknowledges that Plaintiff's detention arose from the initiation

of proceedings, there is no bar here.  (Id.)  Plaintiff argues that the commencement of proceedings refers to a very specific act, namely, the filing of a Notice to Appear with the immigration court.  (Id. at 6 (citing 8 U.S.C. § 1229a).)   In contrast, Plaintiff states that proceedings are initiated when the Department of Homeland Security ("DHS") serves the non-citizen with a Notice to Appear, and the individual may or may not be detained.  (Id. at 5–6.)

Plaintiff argues that his claims accrued on June 7, 2012, when DHS initiated removal proceedings against him by serving him with the Notice to Appear and detaining him.  (Id. at 6.)  Therefore, his claims arose from the initiation of proceedings, not the commencement of proceedings.  (Id.)  Plaintiff argues that the §1252(g) was meant to provide the Attorney General with the authority and discretion to determine "when, whether, or where to commence proceedings, "but was not meant to bar challenges to an individual's detention that was "collateral to the commencement of proceedings."  (Id. at 7–8.)  Plaintiff asserts that his claim is not barred because he is not challenging the decision to commence proceedings, adjudicate his case, or execute a removal order, but rather, he is challenging his detention that occurred when the Government initiated proceedings.  (Id.)

In reply, Defendant argues that Plaintiff is incorrect in asserting that claims arising from the commencement of proceedings are barred under 8 U.S.C.

14

§ 1252(g), but claims arising from the initiation of proceedings under § 1252(g) are not. (Dkt. # 11 at 5.) Defendant asserts that case law establishes that detention resulting from the initiation of proceedings cannot be challenged under the § 1252(g). (Id.) Defendant argues that because Plaintiff's detention was connected directly and immediately to the initiation of removal proceedings, his detention stems directly from the Attorney General's decision to commence removal proceedings and is barred by the § 1252(g). (Id. at 6.)

In AADC, the Supreme Court makes clear that § 1252(g) "applies only to three discrete actions" by the Attorney General: commencing proceedings, adjudicating cases, or executing removal orders. 525 U.S. 471, 482 (1999). The Supreme Court explained that Congress had good reason for excluding these categories of actions from judicial review. Id. at 483–84. When contemplating whether to undertake the commencement of proceedings, the adjudication of cases, or the execution of a removal order, the Attorney General has the discretion to forego prosecution of the case. Id. Section § 1252(g) was implemented to protect that discretion at these specific points. Id. at 484.

The Court clarified that these three actions were not meant to encompass all possible actions connected to deportation proceedings, such as "the decisions to open an investigation, to surveil the suspected violator, to reschedule the deportation hearing, to include various provisions in the final order that is the

15

product of the adjudication, and to refuse reconsideration of that order." Id. at 482.

Ultimately, the Court found that § 1252(g) barred jurisdiction because the

respondents challenged the Attorney General's decision to commence proceedings.

Id. at 487.  Notably, the Court also referred to the respondents' challenge as a

challenge to the "initiation of deportation proceedings." Id. at 474, 492.

   In Humphries v. Various Federal USINS Employees, 164 F.3d 936

(5th Cir. 1999), the Fifth Circuit found that an alien's claim that he suffered

mistreatment while detained in INS detention did not "arise from" a decision or

action of the Attorney General to commence proceedings, adjudicate cases, or

execute removal orders, and therefore his claims were not barred by § 1252(g)

even though he would not have been mistreated had he not been placed in

detention while awaiting exclusion from the United States.  In reaching this

conclusion, the Fifth Circuit recognized that "Congress has provided no explicit

definition of the phrase 'arising from' . . . ." Id. at 943.  However, the court

recognized that "[a]s a general matter, 'arising from' does seem to describe a nexus

somewhat more tight than the also frequently used phrase 'related to.'" Id.  First,

the Fifth Circuit recognized that there are claims clearly not encompassed by the

term "arising from"—claims bearing no more than "a weak, remote, or tenuous

connection to a 'decision or action by the Attorney General to commence

proceedings . . . .'" Id.  Second, the court acknowledged claims at the other end of

the spectrum that clearly fall within the definition of "arising from"—"claims connected directly and immediately with a 'decision or action by the Attorney General to commence proceedings . . . .'" Id.  The Court determined that Humphries's claim was not barred by § 1252(g) because the term "arising from" did not "encompass a connection so remote as having been placed in a situation in which certain third parties subsequently caused an injury." Id. at 944.

Addtitionally, the Fifth Circuit has clarified that removal proceedings commence when a Notice to Appear is filed with the immigration court. DeLeon-Holguin v. Ashcroft, 253 F.3d 811, 814 (5th Cir. 2001) ("We therefore hold that removal proceedings commence when the INS files the appropriate charging document with the immigration court." Id. at 815.).  In DeLeon-Holguin, the Court found that removal proceedings commenced when the INS filed the Notice to Appear with the immigration court, not four years earlier when INS served DeLeon-Holguin with an Order to Show Cause. Id.

Here, Plaintiff received a copy of the Notice to Appear the day before it was filed with the immigration court. (Dkt. # 7-2.)  The question becomes whether serving Plaintiff with the Notice to Appear that resulted in his detention was an action or decision arising from the commencement of proceedings against him.  As discussed above, "claims that clearly are included within the definition of 'arising from' . . . [are] those claims connected directly and immediately with a

17

'decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders'." <u>Foster v. Townsley</u>, 243 F.3d 210, 214 (5th Cir. 2001) (quoting <u>Humphries</u>, 164 F.3d at 943).

Even if this Court were to accept Plaintiff's argument that there is a sharp distinction between the initiation and commencement of proceedings, it does not salvage Plaintiff's claim.  Section 1252(g) bars not only the Court's review of the Attorney General's decision to commence proceedings, but also decisions or actions <u>arising from</u> the commencement of proceedings.  Jurisdiction is barred under § 1252(g) because the action of serving Plaintiff with the Notice to Appear arose from the Attorney General's decision to commence proceedings.

Here, the time between the serving Plaintiff with the Notice to Appear and filing it was less than a day, and it is clear that initiating proceedings against Plaintiff was inexorably connected to the commencement of proceedings against him.  The Court finds that filing of the Notice to Appear with the immigration court falls within § 1252(g), and the action of serving Plaintiff with that Notice to Appear is directly and immediately connected to the action of filing it.  Therefore, § 1252(g) is a jurisdictional bar to this Court.

Although the Court finds that it lacks subject-matter jurisdiction under § 1252(g), in the interest of thoroughness, the Court will address whether jurisdiction exists under the FTCA.

C.    <u>FTCA Jurisdiction</u>

Defendant argues the FTCA itself precludes federal court jurisdiction over Plaintiff's claims.  (Dkt. # 7 at 12–18.)  Defendant asserts that the FTCA only waives liability "in accordance with the law of the place where the act or omission occurred."  (<u>Id.</u> (quoting 28 U.S.C. § 1346(b)(1).)

As discussed above, although Plaintiff challenges the introduction of certain exhibits, Defendant correctly asserts that because this is a jurisdictional question, rather than a challenge for failure to state a claim, the Court may look beyond the Complaint to determine whether jurisdiction exists, and the Court does not have to accept Plaintiff's claim that he is an American Indian born in Canada as true.  (Dkt. # 11 at 8.)

1.    <u>Law Enforcement Exception</u>

Defendant admits that the FTCA waives sovereign immunity for claims based on "assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights" provided the acts or omissions were caused by "law enforcement officers of the United States government."  28 U.S.C. § 2680(h). However, Defendant argues that Plaintiffs claims do not fall within this exception because the actions he complains of were undertaken by an immigration judge and

the ICE attorney prosecuting his case.  (Dkt. # 7 at 13.)  Defendant argues that

these positions are not "law enforcement officers" within the exception.  (Id.)

Defendant argues that the injuries of which Plaintiff complains are

(1) the Immigration Judge wrongly telling Plaintiff his only defense was U.S.

citizenship; (2) the ICE officer—whom Defendants contend is the ICE attorney

prosecuting the case—having information that Plaintiff's father was an American

Indian born in Canada; and (3) the failure of both the ICE attorney and the

Immigration Judge to investigate Plaintiff's claim of being an American Indian

born in Canada.  (Dkt. # 7 at 13.)

In response, Plaintiff asserts that he is not complaining of the actions

of the immigration judge or the ICE attorney,[3] but rather those actions undertaken

by the detention and deportation officers employed by ICE.[4]  (Dkt. # 10 at 2.)

Plaintiff has sought leave to amend his complaint to explicitly state that the ICE

officers who arrested Plaintiff were law enforcement officers.  (Id. at 9.)  Plaintiff

states that immigration officers include employees of DHS such as deportation

officers, detention enforcement officers, detention officers and immigration

enforcement agents and that immigration enforcement agents and immigration

_____

[3] Plaintiff admits that he cannot bring suit against the ICE attorney or the
Immigration Judge.  (Dkt. # 10 at 10.)

[4] Plaintiff requests leave to amend his complaint if the Court finds it unclear on this
point.  (Dkt. # 10 at 2.)

officers have the power to arrest, meaning they are law enforcement officers.  (Id.)

Plaintiff reiterates that the ICE immigration officers arrested him, interviewed him,

decided to place him in jail, and detained him until his release.  (Id.)

Defendant's Reply points out that Plaintiff's statement means he has

abandoned any claims against the Immigration Judge or the ICE attorney, and

therefore has waived "any claims arising from the alleged failure of the

immigration judge or ICE attorney to investigate" Plaintiff's claim that he is an

American Indian born in Canada.  (Dkt. # 11 at 7–8 n.2.)  However, Defendant

does not dispute that the ICE officers are properly defined as law enforcement

officers for whose actions the FTCA waives immunity.  (See id.)  Therefore,

because Plaintiff is suing law enforcement officers, the Court's jurisdiction is not

barred under the FTCA.

### 2.   Discretionary Function Exception

Pursuant to the Discretionary Function Exception to the FTCA, the

Government is not liable for

> [a]ny claim based upon an act or omission of an employee of the
> Government, exercising due care, in the execution of a statute or
> regulation, whether or not such statute or regulation be valid, or based
> upon the exercise or performance or the failure to exercise or perform
> a discretionary function or duty on the part of a federal agency or an
> employee of the Government, whether or not the discretion involved
> be abused.

28 U.S.C. § 2680(a).

Defendant argues that because this exception exempts the Government from liability for an employee's performance of a discretionary function, Plaintiff's claims must fail.  (Dkt. # 7 at 14.)  Defendant maintains that because Plaintiff has not alleged intentional misconduct, Plaintiff's claims are precluded by the discretionary function exception to the FTCA.  (Id. at 15.)

In contrast, Plaintiff contends that "Defendant did not have authority to deport Mr. Hodgson and consequently Defendant did not have discretion to detain Plaintiff."  (Dkt. # 10 at 10.)  Plaintiff argues that because his complaint pleads that he is an American Indian born in Canada, and that statement must be taken as true for the purposes of this motion to dismiss, ICE officers had no authority to detain him because he cannot be deported for any reason pursuant to In re Yellowquill, 16 I & N Dec. 576, 578 (BIA 1978), and therefore they cannot be shielded by the discretionary function exception.  (Id.)

Additionally, Plaintiff argues that the "law enforcement proviso," which he contends waives sovereign immunity when certain intentional acts are committed by federal law enforcement officers, should be applied here. (Id. at 12–13.)

In reply, Defendant asserts that the relevant inquiry "is not whether Plaintiff was an American Indian[,] . . . [but rather,] whether the decision to initiate removal proceedings and detain Plaintiff pending resolution of those proceedings

22

was a discretionary function."  (Dkt. # 11 at 8.)  Defendant maintains that it is

"black letter law" that decisions regarding whether and how to conduct an

investigation are within the discretionary function exception of the FTCA.  (Id.)

And therefore, ICE agents' decisions regarding the investigation of Plaintiff's

claim to be an American Indian are barred.  (Id.)

   First, Defendant is correct that because his claim is being challenged

on jurisdictional grounds, the Court does not have to rely solely on his pleading

that he is an American Indian born in Canada.  <u>Ramming</u>, 281 F.3d at 161 (A court

evaluating a 12(b)(1) motion may consider "(1) the complaint alone; (2) the

complaint supplemented by undisputed facts evidence in the record; or (3) the

complaint supplemented by undisputed facts plus the court's resolution of disputed

facts.").

   Second, the discretionary function exception "covers only acts that are

discretionary in nature, acts that involve an element of judgment or choice."

<u>United States v. Gaubert</u>, 499 U.S. 315, 322 (1991) (internal quotation marks

omitted) (finding that "[d]ay-to-day management of banking affairs . . . regularly

requires judgment as to which of a range of possible permissible courses is the

wisest").  If a "federal statute, regulation, or policy specifically prescribes a course

of action for an employee to follow," then the actor does not have the necessary

element of judgment or choice "because the employee has no rightful option but to

23

adhere to the directive." Id. (internal citations and quotation marks omitted).

However, the Court's inquiry does not end there; the Court also must examine

"whether the judgment is the kind that the discretionary function exception was

designed to shield." Id.

> When established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion. For a complaint to survive a motion to dismiss, it must allege facts which would support a finding that the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime.

Id. at 324–25.

Prior to assessing whether the ICE officers' actions fall within the

discretionary function exception to the FTCA, precluding this Court's jurisdiction,

the Court must first discern what actions Plaintiff is challenging.

In Plaintiff's Complaint, he states that he was injured because ICE

officers detained him, issued him a Warrant for Arrest, Notice to Appear, and

Notice of Custody determination, and failed to investigate his claim that he was an

American Indian born in Canada. (Dkt. # 1.) In his response, Plaintiff clarifies

that "[he] is not complaining about the actions of the Immigration Judge who

oversaw his removal proceedings or the federal immigration attorney . . . . They

did not hold the keys to [his] cell." (Dkt. # 10 at 2.)

Because Plaintiff complains about the decision of ICE officers to detain him, this is the action the Court will analyze under the discretionary function exception.

Plaintiff argues that because he was immune from deportation due to his status as an American Indian born in Canada, the ICE officers had no discretion to detain him.  (Dkt. # 10 at 10.)

What Plaintiff is essentially challenging is the ICE officers's decisions regarding how to investigate Plaintiff's case.  This action falls squarely within the discretionary function exception.  See Smith v. United States, 375 F.2d 243 (5th Cir. 1967); Mesa v. United States, 837 F. Supp. 1210, 1212 (S.D. Fla. 1993).

The Fifth Circuit maintains that the Government's failure to arrest or prosecute persons falls within the discretionary function exception.  Smith, 375 F.2d 243.  "The federal government's decisions concerning enforcement of its criminal statutes comprise a part of its pursuit of national policy."  Id. at 247.  In Smith, the Fifth Circuit stated that the discretionary function exception

> exempts the government from liability for exercising the discretion inherent in the prosecutorial function of the Attorney General, no matter whether these decisions are made during the investigation or prosecution of offenses . . . Another holding could diffuse the government's control over policies committed to it by the Constitution, and irrationally concentrate political responsibility in fortuitous lawsuits.

Id.

Additionally, there is no requirement that the decisions made by law enforcement officers during the investigation or prosecution of a case must be correct to be fall within the discretionary function exception.  See Kelly v. United States, 924 F.2d 355 (1st Cir. 1991).  In Kelly, the plaintiff sued the Government seeking damages because other agents failed to properly investigate the claim against him that he was leaking information from the department.  The Court ruled against the plaintiff because the action of investigating the case was precisely what the discretionary function exception was designed to protect.  Id. at 362.

The discretionary function exception "preserves governmental immunity for discretionary functions to protect the government from judicial second guessing."  Sutton v. United States, 819 F.2d 1289, 1293 (5th Cir. 1987). Therefore, even if this Court were to rely on Plaintiff's pleading that he is an American Indian born in Canada with the requisite quantum of blood, the decision by the ICE officers to investigate him is squarely within the discretionary function exception, and the FTCA does not waive sovereign immunity for these claims.  It was the ICE officers' decision to investigate Plaintiff that led to his custody and continued detention, and this decision falls within the discretionary function

exception.[5]  Therefore, this Court lacks jurisdiction to hear Plaintiff's claims under

the FTCA.

            3.      Law Enforcement Proviso

        The "law enforcement proviso," 28 U.S.C. § 2680(h), operates as an

exception to the discretionary function exception.  Andrade v. Chojnacki, 65 F.

Supp. 2d 431, 466–67 (W.D. Tex. 1999).  The law enforcement proviso provides

> Any claim arising out of assault, battery, false imprisonment, false
> arrest, malicious prosecution, abuse of process, libel, slander,
> misrepresentation, deceit, or interference with contract rights:
> Provided, That, with regard to acts or omissions of investigative or
> law enforcement officers of the United States Government, the
> provisions of this chapter and section 1346(b) of this title shall apply
> to any claim arising, on or after the date of the enactment of this
> proviso, out of assault, battery, false imprisonment, false arrest, abuse
> of process, or malicious prosecution.  For the purpose of this
> subsection, "investigative or law enforcement officer" means any
> officer of the United States who is empowered by law to execute
> searches, to seize evidence, or to make arrests for violations of
> Federal law.

28 U.S.C. § 2680(h).  This provision works in tandem with the discretionary

function exception:  Neither the discretionary function exception nor the law

enforcement proviso "exist independently of the other nor does one predominate

over the other.  Both sections recognize serious legitimate policies that must be

_____

[5] The Court recognizes that pursuant to 8 U.S.C. § 1226(c), Plaintiff's detention
was mandatory once ICE officers initiated an investigation against him because of
his criminal history.  However, it is the decision to investigate Plaintiff that is
actually at issue here, and that decision falls within the discretionary function
exception.

preserved." <u>Camacho v. Cannella</u>, No. EP-12-CV-40-KC, 2012 WL 3719749, at *7 (W.D. Tex. Aug. 27, 2012) (quoting <u>Sutton</u>, 819 F.2d at 1295).

Although Plaintiff argues that the "law enforcement proviso" applies here and waives sovereign immunity for claims of assault, battery, false imprisonment, false arrest, malicious prosecution, or abuse of process, the law enforcement proviso, applied to the specific facts here, does not cure the jurisdictional defect.

The FTCA only waives liability "in accordance with the law of the place where the act or omission occurred."  28 U.S.C. § 1346(b)(1).  To establish a claim for false imprisonment under Texas law, a plaintiff must plead that the defendant (1) willfully detained the plaintiff, (2) without his consent, and (3) without the authority of the law.  <u>Sears, Roebuck & Co. v. Castillo</u>, 693 S.W. 2d 374, 375 (Tex. 1985).  Texas also requires that "[t]he plaintiff must prove the absence of authority in order to establish the third element of a false imprisonment cause of action."  <u>Id.</u> at 376.

Defendant argues that because there was probable cause to believe that Plaintiff was in the United States in violation of a law or regulation, Plaintiff cannot establish the third element of false imprisonment.  (Dkt. # 7 at 17.)

In response, Plaintiff argues that because of his status as an American Indian, ICE acted without any legal authority to detain him, and therefore, he has stated the necessary elements of a claim for false imprisonment.  (Dkt. # 10 at 12.)

However, although Plaintiff repeatedly claims that because he is an American Indian born in Canada, law enforcement officers could not detain him, Plaintiff has not pled any facts to demonstrate that the ICE officers did not have probable cause to detain him.

Therefore, the Court finds that even if the Court were to apply the law enforcement proviso, Plaintiff has not pled the necessary elements of a claim for false imprisonment, and the Court does not have jurisdiction under the FTCA.

II.     Plaintiff's Motion to Amend

Plaintiff seeks to amend his complaint pursuant to Rule 15(a) of the Federal Rules of Civil Procedure.  (Dkt. # 12.)  Plaintiff states that his amended complaint will (1) clarify his qualification as an American Indian born in Canada; (2) clarify the breadth of his claims asserted against the United States because of the actions of the ICE officers; and (3) include the names of the specific ICE officers involved.  (Id. ¶¶ 5–7.)  Plaintiff states that these amendments are sought in good faith and will not delay the prosecution of this case.  (Id. ¶¶ 8–9.)

Defendant argues that Plaintiff's proposed amendments cannot cure the deficiencies of the Complaint raised in Defendant's Motion to Dismiss, and

therefore are futile.  (Dkt. # 13 at 1.)  Defendant argues that the addition of the statement that Plaintiff is "an American Indian born in Canada whose blood quantum, according to the Ermineskin Indian Tribe, is 50% Plains Cree American Indian," does not cure the jurisdictional defects that preclude this Court from entertaining Plaintiff's claims.  (Id.)

Although the Federal Rules of Evidence instruct courts to freely grant leave to amend, courts are exempt from this exhortation when the amendment would be futile, as here.  Neither Plaintiff's Complaint nor his proposed First Amended Complaint can overcome the jurisdictional barriers presented by § 1252(g) or the FTCA.  (Dkt. ## 1, 12-1).  Because this Court lacks jurisdiction over Plaintiff's claims, the Court **DENIES** Plaintiff's Motion to Amend (Dkt. # 12).

## CONCLUSION

For the reasons stated above, the Court **GRANTS** Defendant's Motion to Dismiss (Dkt. # 7) and **DENIES** Plaintiff's Motion to Amend (Dkt. # 12.)

IT IS SO ORDERED.

DATED:  San Antonio, Texas, August 19, 2014.

_____
David Alan Ezra
Senior United States District Judge

30